GITLER et al. v. RUSSIAN CO. et al.

(Supreme Court, Appellate Division, First Department.  February 14, 1908.)

1. JUDGMENTS—EQUITABLE RELIEF—FRAUD.

In proceedings to subject property to a judgment, a defense of fraud in the procurement of the judgment, in that false testimony was given, is not good, as the fraud for which equity will set aside a judgment must be some extrinsic or collateral matter not acted upon by the court rendering the judgment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 839.]

2. CONTRACTS—VALIDITY—PUBLIC POLICY.

An agreement on a valuable consideration that plaintiffs would not bring any action in the state on a judgment in their favor against defendants, but that action, if any, should be brought in Russia, was not void as within the rule that parties cannot by stipulation oust the state courts of jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 612.]

Appeal from Special Term.

Proceedings by Abraham Gitler and another against the Russian Company for Sea, River, and Land Insurance, Conveyance of Goods and Advances in Goods in Warehouses, impleaded with others, to subject certain property to a judgment against defendant in plaintiff's favor.  From a judgment (106 N. Y. Supp. 886) sustaining demurrer to the answer and counterclaim, defendant appeals.  Reversed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Howard T. Kingsbury, for appellant.
Alfred D. Lind, for respondents.

SCOTT, J.  The defendant appeals from so much of an interlocutory judgment as sustained a demurrer to the first and second separate defenses contained in the answer.  The action is in the nature of a creditors' bill seeking to reach certain property alleged to belong to defendant, and therewith to satisfy a judgment entered in favor of plaintiffs against defendant on November 13, 1902.  The first separate defense seeks to avoid the judgment entirely or to forever restrain its collection, upon the ground that it was obtained by fraud.  The defense sets forth that the judgment was obtained by default, upon an inquest, and that the defendant has unavailingly used every possible effort to have its default opened, and the judgment vacated.  The fraud charged is that upon the inquest one of the plaintiffs, who was called and sworn as a witness, testified falsely respecting the value of the goods which were the subject of the action.  It is manifest that the demurrer to this defense was rightly sustained.  While equity will sometimes intervene to set aside a judgment obtained by fraud or unfair practices, it will not do so where the only fraud alleged is that it was procured by perjured testimony, or for any matter which was actually presented or considered in the judgment assailed.  The only frauds for which a judgment will be set aside, in an independent action, are those which are extrinsic or collateral to the matter tried by the first court, and not a fraud in the matter on which the decree was rendered.  Mayor, etc., v.

Brady, 115 N. Y. 599, 22 N. E. 237. The demurrer to the second separate defense raises a more difficult question. The defense is:

"That in or about the month of November, 1902, and subsequent to the entry of the judgment referred to in the complaint herein, the plaintiffs, for a valuable consideration, agreed with the defendant herein that they, the said plaintiffs, would not bring any action in the state of New York against this defendant upon or in respect to the judgment referred to in the complaint herein, but that any such action should be brought, if at all, in Russia, and thereafter such action was brought in Russia by an assignee of the plaintiffs."

The objection urged against this defense is that the agreement therein pleaded is void and against public policy, because its purpose and effect is to oust the courts of this state of jurisdiction. It is a rule of general acceptance that parties cannot by agreement or stipulation oust the courts of their jurisdiction as to controversies thereafter to arise. Insurance Co. v. Morse, 87 U. S. 445, 22 L. Ed. 365. This rule has been applied in innumerable cases where insurance policies, building contracts, and the like have contained stipulations that difference or disputes arising under them should be determined by arbitration, or tried only in the courts of a particular jurisdiction. The question presented here is somewhat different. The agreement pleaded in the answer and admitted by the demurrer has reference only to the method to be adopted for the collection of a particular judgment, and its purport is not to cancel the judgment or to debar the plaintiff from pursuing any appropriate remedy for its collection, save only the prosecution of the particular remedy by action in the courts in this state.

It is difficult to see how the public policy which forbids an agreement to withdraw from the ordinary jurisdiction of the courts future and unknown controversies can have any proper application to such a contract as is relied upon in this case. In Insurance Co. v. Morse, supra, it was said:

"A man may not barter away his life or his freedom or his substantial rights. * * * In civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge. So he may omit to exercise his right to remove his suit to a federal tribunal as often as he thinks fit in each recurring case. In these aspects any citizen may no doubt waive the rights to which he may be entitled. He cannot, however, bind himself in advance by an agreement which may be specifically enforced thus to forfeit his rights at all times and on all occasions whenever the case may be presented."

It is thus made clear that the Supreme Court in deciding Insurance Co. v. Morse, which is recognized as a leading authority in this country, had clearly in mind the distinction between an agreement not to submit to the courts a particular pending controversy and an agreement to withdraw from the jurisdiction of the courts all future controversies that might arise respecting the relative rights of the contracting parties, and that its decision was limited to the latter class of agreements.

It is well settled that parties by stipulation or agreement may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. Matter N. Y. L. & W. R. R. Co., 98 N. Y. 447. They may, by agreement, limit the scope of judicial inquiry in a pending action and a stip-

ulation to that effect is not unreasonable, or against good morals or public policy. Hong Kong & Banking Corp. v. Cooper, 114 N. Y. 388, 21 N. E. 994. It has accordingly held in this state that a stipulation not to appeal to the Court of Appeals, in an appealable case, will be enforced (Townsend v. Masterson, etc., Stone Dressing Company, 15 N. Y. 587), providing it is clear in its terms and leaves no doubt of the intention of the party so stipulating to cut himself off from the right of appeal (Stedeker v. Bernard, 93 N. Y. 589). The promise to forbear to prosecute a particular claim upon which one has a right to sue is universally held to be a sufficient consideration to support a contract (Cyc. vol. 9, p. 388), and it certainly could not be held to be a sufficient consideration if it was itself invalid and unenforceable. We are of the opinion, therefore, that a valid contract may be made to refrain from pursuing a particular remedy to enforce an existing claim, since public policy is in no way concerned with the option which every man has to sue or forbear to sue. Perryman v. Allen, 50 Ala. 568. The agreement in the present case goes no further than this. The cause of action to enforce the judgment was the plaintiffs. They could do with it as they saw fit, to the extent of releasing it wholly on the one hand, or of prosecuting every legal method for its collection on the other. Whatever course they saw fit to adopt was no matter of public concern, and affects no question of public policy, and, if they saw fit to make an agreement, otherwise valid,that they would forbear to pursue their remedy by action in the courts of this state, there is no public policy which renders that agreement invalid.

It follows that the interlocutory judgment must be affirmed in so far as it sustains the demurrer to the first separate defense, and that, as to the second separate defense, the interlocutory decree must be reversed, and the demurrer overruled, without costs in this court to either party. All concur.