THE YONKERS RAILROAD COMPANY, Respondent, *v.* THE CITY OF YONKERS and Others, Appellants.

Second Department, November 6, 1925.

**Municipal corporations — franchise to operate buses in city of Yonkers — taxpayer's action under General Municipal Law, § 51, to restrain sale of thirteen franchises for one bid — sale should be made separately — ordinance reserving right in city to require extension of routes or addition of new routes does not comply with Second Class Cities Law, § 37.**

An injunction *pendente lite* will be granted in a taxpayer's action brought under section 51 of the General Municipal Law to restrain the city of Yonkers from selling at one time and for one bid thirteen franchises to operate several bus lines over several distinct routes in the city of Yonkers, for said franchises should be offered for sale separately.

The ordinance of the city of Yonkers relating to the sale of the franchises does not comply with section 37 of the Second Class Cities Law, providing that " additional rights or extensions in the street or streets in which the said franchise exists " may be granted, since the provision of the ordinance is that the city reserves the right to require the extension of routes " or the addition of new routes " upon the same terms. If the provision in question was enacted to reserve to the city the powers granted to it by section 37 of the Second Class Cities Law, it is unnecessary, and if it grants to the purchaser any right to any future franchises, it violates the statute.

APPEAL by the defendants, The City of Yonkers and others, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county

of Westchester on the 21st day of October, 1925, granting plaintiff's motion for an injunction *pendente lite.*

*Harry J. Larragh, Assistant Corporation Counsel* [*Daniel J. Cashin, Corporation Counsel,* with him on the brief], for the appellants.

*Alfred T. Davison* [*Addison B. Scoville* with him on the brief], for the respondent.

Jaycox, J.:

Prior to the commencement of this action the common council of the city of Yonkers adopted an ordinance fixing and describing thirteen routes for the operation of buses in that city and providing for the sale of the franchises therefor at public auction. Under the terms of the ordinance all the franchises are to be sold together. In accordance with the ordinance the franchises have been advertised for sale to the bidder offering the highest percentage of gross receipts arising from the operation of buses under said franchises. The plaintiff, a taxpayer, has brought this action to restrain the sale, claiming that a sale made in accordance with the terms of the ordinance would result in waste of the property of the defendant, the city of Yonkers. (Gen. Mun. Law, § 51.) The facts as set forth in the moving papers are undisputed, the defendants having filed no affidavits in opposition. In the ordinance above mentioned the routes are separately described and numbered. The mileage of streets involved does not appear, but the papers show that more than fifteen miles of streets of said city are embraced in these proposed routes.

The power of the common council to establish bus routes and to provide for the sale thereof at public auction is undisputed. (Second Class Cities Law, § 37.) The only question involved in this action is as to the manner of sale provided for in the ordinance; that is, can thirteen bus routes be grouped and sold at one time for one bid, or does that form of sale necessarily result in a restraint upon competition and the lowering of the price bid. Necessarily, under the ordinance, one bid must be submitted for all the routes; a bidder gets all or none. As it cannot be known at the time of the sale just what routes the Public Service Commission will approve, and as the bidder binds himself to operate such routes as may be approved, all bidders will be limited in their bids to an amount that the least lucrative of the routes will justify. The sale is but one step in the process of procuring the right of operation. In addition to procuring the franchises from the city the purchaser must procure from the Public Service Commission a certificate of convenience and necessity. (Pub. Serv. Comm. Law, § 53, as amd. by Laws of 1921, chap. 134; Transp.

Corp. Law, § 25, added by Laws of 1913, chap. 495, as amd. by Laws of 1915, chap. 667; Id. § 26, as added by Laws of 1915, chap. 667.) Until that certificate is obtained there is no way of determining what routes the purchaser will be permitted or required to operate. The ordinance in question here provides: " In the event that the Public Service Commission grants a certificate of convenience and necessity for a portion only of the routes, or of any route herein specified, the successful bidder does, nevertheless, undertake and agree to operate the said route or portion thereof for which the certificate of convenience and necessity shall have been granted." The same question (arising on slightly different facts) was involved in *Beekman* v. *Third Avenue R. R. Co.* (13 App. Div. 279; affd., 153 N. Y. 144). In that case an attempt was made to sell at one time and at one bid two extensions of the defendant's railroad. The two extensions were about half a mile apart and were connected only by the defendant's railroad. That sale was made under section 93 of the Railroad Law of 1890, as amended by chapter 434 of the Laws of 1893 (See 2 R. S. [9th ed.] 1300, § 93.) In so far as the question here involved is concerned the law governing that sale was the same as that under which it is proposed to sell these franchises. The object of both statutes is to assure to the city the largest return practicable for the franchises sold. (*Beekman* v. *Third Avenue R. R. Co.*, 13 App. Div. 279, 284; 153 N. Y. 144, 153.) The Appellate Division in that case said (p. 286): " The result of putting the two franchises together was to impose upon the profitable one the unnecessary burden of bidding for one which would probably be unprofitable, and thus reduce the percentage which would be given for the profitable franchise. These considerations are stated with reference to this particular case only, but they show good reason why the sale of only one extension or franchise should be permitted at one time, and why the statute, which in its terms permits only one sale at one time, should be construed according to its letter." This reasoning was approved by the Court of Appeals, which held that such a grouping of franchises in one sale tended to eliminate competition. Its effect in this case must be similar. The plaintiff is operating a street railroad in the city of Yonkers, and nearly nine miles of the routes proposed to be sold are on the same streets upon which the plaintiff operates its railroad. More than six miles of said routes are on streets paralleling such railroad. The sale also involves other lines which do not compete with plaintiff's lines. I think it may be safely assumed that the lines which must compete with an established

31

railroad are not likely to be as profitable as those operating without competition. Upon the argument, and in its brief, the plaintiff asserts that this result will follow and the defendant does not in any way controvert it. Aside, however, from this consideration, it is impossible to believe that all of these franchises are of the same value or so nearly of the same value that one will not be a burden upon the other when all are sold together.

The plaintiff also alleges that it would bid for some of the franchises if sold separately, but that it cannot do so if all are sold together. The plaintiff further says that fifteen persons and corporations have made application to the common council of the city of Yonkers for a franchise or consent to operate buses over certain routes included in the routes included in the ordinance in question, and that upon a prior attempted sale of these franchises in a group, as it is now proposed to sell them, only two bids were received. This seems to clearly demonstrate a result which might be anticipated from a sale of the franchises so grouped. Clearly a sale in the manner here proposed tends to suppress competition and decrease the amount of percentage bid. (*Beekman* v. *Third Avenue R. R. Co., supra.*) The language of the statute seems to contemplate a sale of one franchise at a time and not the sale of a number of franchises grouped together. (Second Class Cities Law, § 37. See, also, General Cities Law, § 20, subd. 10, and § 23, subd. 2, ¶ b, as added by Laws of 1913, chap. 247.)

The ordinance providing for the sale of these franchises contains the following provision: " The city reserves the right to require extensions of routes herein described or the addition of new routes upon the same terms as and as a part of the contract herein, provided the routes so extended and added may be safely and feasibly operated, and provided that such extended or added routes may be operated profitably by the company." It is claimed that this provision is authorized by the last sentence of section 37 of the Second Class Cities Law. That provision of the statute only authorizes the grant of " additional rights or extensions in the street or streets in which the said franchise exists." This provision of the statute relates only to such additions or extensions in streets already in use as will make operation convenient and practicable, and does not authorize the granting of new routes. This ordinance, however, provides for the operation of new routes, not limited to the same streets as shall then be used by the purchaser, but upon any streets upon which the city shall deem a bus line desirable, and the operation shall be " upon the same terms." If this be regarded as an agreement to award to the purchaser other franchises upon the same terms, it is a sale of a

franchise other than at public auction as the statute requires. If, on the other hand, it be regarded as a bid in advance, in the same terms, for future franchises, it imposes such unknown and indefinite burdens as would tend to stifle competition. If this provision was intended to reserve to the city the powers granted to it by section 37 of the Second Class Cities Law, it is unnecessary. If it grants to the purchaser any right to any future franchises, it violates the statute.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

KELLY, P. J., RICH, MANNING and KAPPER, JJ., concur.

Order granting injunction *pendente lite* affirmed, with ten dollars costs and disbursements.